# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUZ CHAVEZ and STEPHEN TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT LENNON, Alderman of the 1st Ward of the City of Berwyn,<br><br>Defendants. | 22-cv-5924 |

## COMPLAINT

Plaintiffs Luz Chavez and Stephen Taylor through counsel, complain against Defendant Scott Lennon, the Alderman of the 1st Ward of the City of Berwyn, as follows:

### Nature of the Case

1. As the Supreme Court has recognized, social media platforms such as Facebook are "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). These platforms have transformed civic engagement by allowing elected officials to communicate directly with their constituents and receive immediate feedback. "Governors in all 50 States and almost every Member of Congress have set up [social media] accounts for this purpose," allowing citizens to "petition their elected representatives and otherwise engage with them in a direct

manner." *Id*. at 1735. Social media platforms such as Facebook enable ordinary citizens to speak directly to their government representatives and to listen to and debate others about issues of public interest, in much the same way they could if they were gathered on a sidewalk, public park, city council meeting or town hall assembly.

2. In this First Amendment case, Plaintiffs, individually and on behalf of a proposed class of similarly situated Berwyn residents, challenge the constitutionality of the manner in which Alderman Scott Lennon regulates speech on the Facebook Page he has created for use as a government official.

3. Plaintiffs Luz Chavez and Stephen Taylor are politically engaged residents of Berwyn who are blocked from Alderman Lennon's Facebook Page. Plaintiffs seek injunctive relief (on behalf of themselves and the proposed class) prohibiting Alderman Lennon from continuing to engage in content-based regulation of speech on his official Facebook Page and nominal and compensatory damages for the violations of their First Amendment rights.

**Jurisdiction and Venue**

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. §1331 because this action arises under federal law. Specifically, this case arises under 42 U.S.C. §1983 and alleges violations of the First Amendment of the United States Constitution.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the events giving rise to Plaintiffs' claims occurred in this district.

## The Parties

6. Defendant Scott Lennon is the Alderman of Berwyn's 1st Ward. Alderman Lennon administers and oversees the Facebook Page and has final say over whether individuals are blocked from interacting with the Page. Alderman Lennon is sued in his individual and official capacities.

7. Plaintiffs Luz Chavez and Stephen Taylor are residents of Berwyn. Chavez and Taylor maintain Facebook accounts through which they seek to interact with Alderman Lennon's Facebook Page. Because Alderman Lennon has blocked Plaintiffs, they are completely banned from commenting on Alderman Lennon's Facebook Page, tagging the Page in their own posts, sending a Facebook message to the Page, or responding to comments posted by others on the Page.

## Factual Allegations

**Facebook Pages**

8. In addition to allowing users to create personal profiles to interact with others on the site, Facebook allows users to create "Pages," public-facing profiles used by brands, companies, government officials, and other public figures to interact with the public.

9. Facebook users can control the privacy of their personal profiles by making them visible only to select audiences, *e.g.*, users they've added as "friends" or smaller subgroups of friends defined by the user. In contrast, Pages are inherently public. Anyone on or off Facebook can view the posts and comments on

Pages. Anyone with a Facebook account can interact with a Page (*e.g.*, comment on posts; link to the Page in their own posts; ask questions; or send a message).

10. The Page administrator's posts appear in a feed on the Page's front page. Visitors to the Page can post comments beneath any posts unless the Page administrator has disabled commenting.

11. Facebook also enables users to "tag" Facebook Pages on posts they make on their own Facebook accounts. When a Page is "tagged" by a Facebook user, Facebook sends a notification to the Page administrator and the post in which the Page is tagged appears in the "Mentions" tab of the Page, which is visible to visitors to the Page.

12. A Page administrator can control who can interact with his or her Facebook Page by adding individuals to a "blocked" list. When an individual is "blocked" by a Page, the individual cannot interact with the Page at all—he or she cannot comment on the Page administrator's posts on the Page, respond to others' comments on the Page, tag the Page, or send the Page a direct message.

**Alderman Lennon's Facebook Page**

13. Defendant Alderman Lennon has created a Page for his work as the Alderman of the 1st Ward. This Page appears at the URL https://www.facebook.com/scottlennonfor1stward. The Page is separate from Lennon's personal Facebook account. The Page description set forth on the Page states as follows: "Scott is here to listen and to find realistic compromises that embrace progress for his neighbors." The Page provides contact information for his

4

Ward Office, his office phone number and his City of Berwyn email address (slennon@ci.berwyn.il.us). The Page title is "Scott Lennon Berwyn's 1st Ward Alderman." The Page is categorized as belonging to a "Politician."

14. Defendant Alderman Lennon uses his official Facebook Page to communicate with his constituents about a variety of government functions. In recent posts he has shared information about recent arrests by the Berwyn Police Department; invited citizens to contact him in anticipation of an upcoming City Council meeting; and informed residents about road closures in the community.

15. The Page has approximately 3,000 followers. Alderman Lennon has enabled the interactive features of the Page, which allow visitors to comment on his posts or send the Page a direct message through Facebook. Many Berwyn residents participate in the comments sections that appear under Alderman Lennon's posts, expressing opinions, asking questions, and engaging in debate.

16. Alderman Lennon posts on his Facebook Page nearly every day, oftentimes several times a day, to share photos of himself appearing at events in his official capacity as the 1st Ward Alderman, information about local events, goings on in City government, and other matters of interest to residents of the City of Berwyn. Each post receives reactions (*e.g.*, "thumbs up" or "heart" reactions) from users who follow the Page, and posts are followed by a comments section in which constituents can ask follow-up questions, react to the posts, and debate viewpoints.

17. In an effort to suppress dissent in this forum, Alderman Lennon blocks individuals such as Plaintiffs whom he perceives as critics or political opponents

from interacting with the Page. Blocked individuals cannot react to or comment on Alderman Lennon's posts; send Alderman Lennon a message through Facebook; tag Alderman Lennon's Page in a post on their own Facebook accounts; or respond to comments posted by others on Alderman Lennon's Facebook Page. This amounts to content-based regulation of speech that violates the First Amendment.

18. Alderman Lennon has not posted any rules or standards for users who visit the Page—*e.g.*, limitations on how often one can post or comment, guidance about permissible topics of conversation, and/or community standards about language and civility.

**Plaintiff Luz Chavez**

19. Plaintiff Luz Chavez is a Berwyn resident with lifelong ties to Berwyn. She grew up there and has resided there for the past six years.

20. Chavez is a well-known activist in Berwyn politics. She regularly attends City Council meetings. Her activism in Berwyn involves a variety of issues including advocating for fiscal responsibility and transparency in City government; supporting appropriate public health measures in response to the COVID-19 pandemic; organizing aid for persons and businesses adversely affected by construction in the City; promoting civic and democratic engagement in Berwyn municipal elections; advocating for racial justice and police accountability; and exposing patronage and nepotism in City government.

21. Chavez has been an outspoken critic of Alderman Lennon and his political party, the Democratic Citizens of Berwyn. Chavez is involved with a community

organization and independent political action committee called Rizoma Collective, which advocates for progressive policies and the election of independent candidates for office in Berwyn.

22. Chavez also participated in a rally and march with members of Berwyn's LGBTQ+ community in protest of Alderman Lennon emblazoning his political party logo and name on the City's official Pride Flags.

23. Chavez runs the Yo Soy Berwyn Facebook Page to distribute community news and information about City Council and Ward meetings to Spanish-speaking residents of Berwyn.

24. Alderman Lennon is a powerful and highly visible member of Berwyn City Council. He has a great deal of influence over matters of importance to Chavez as the chair of the Finance and Budget Committees on the Council. Alderman Lennon also formerly chaired the Council's Outreach committee, which is responsible for communication with Spanish-speaking residents, an issue of particular importance to Chavez.

25. Alderman Lennon has blocked Chavez from interacting with his Facebook Page and has also blocked other activists in the community who hold different political beliefs from him. Chavez has been blocked from the Page since 2019 and remains blocked today.

26. As a result of being blocked from Alderman Lennon's Page, Chavez is excluded from engaging in civic dialogue on issues of importance to her and the community. For example, on July 20, 2022, Alderman Lennon posted about a hate

crime committed by a Berwyn City employee. The post received more than 100 responses and comments. Dozens of community residents reacted to the post, asking Alderman Lennon questions about the investigation, and expressing their varying views. Chavez has been organizing with other members of the community concerning the Mayor's handling of the incident. She was completely blocked from engaging in the dialogue on Alderman Lennon's Page.

27. On August 28, 2022, Alderman Lennon posted news about a shooting in the 1st Ward. The post received more than 100 comments. Chavez covered the incident for the Yo Soy Berwyn Page, but was prohibited from engaging with the members of the community who were commenting on the incident and the City's response to it on Alderman Lennon's Facebook Page.

28. On July 22, 2022, Alderman Lennon posted about an upcoming City Council meeting which included an agenda item regarding a proposed development in the community. Chavez and Rizoma opposed the development due to concerns about an alleged predatory lender that was involved in the deal. Chavez wanted to ask Lennon to vote against the development and encourage other residents to speak out against the lender at the meeting, but she was prohibited from commenting on the post.

29. At times, City Council committee meetings are not announced on the City's official website and are only publicized on Alderman Lennon's Facebook Page. For example, a September 29, 2022, meeting of the City's Budget and Finance Committee was only announced on Alderman Lennon's Facebook Page and did not

appear on the City's official community calendar. Chavez almost missed the meeting, which she wanted to attend, because she couldn't see Alderman Lennon's post.

30. Being blocked from Alderman Lennon's Facebook Page has a significant impact on Chavez's ability to engage in political dialogue with her elected representative and her community and impedes her access to information that is important to her as a resident of the community.

**Plaintiff Stephen Taylor**

31. Plaintiff Stephen Taylor is a Berwyn resident and activist with a strong interest in local politics, community development, and social issues. Taylor has been an advocate for responsible budgets, affordable housing, and infrastructure improvements in Berwyn.

32. As the chair of the City's Budget and Finance Committees, Alderman Lennon has significant sway over many issues of importance to Taylor, including how the City allocates public funding in its annual budget; the City's spending on police; the promotion and retention of public employees with histories of misconduct and excessive force; neglected infrastructure improvements; gentrification and affordable housing; and zoning changes and proposed developments in the community.

33. Alderman Lennon blocked Taylor from his Facebook Page in October 2021, and Taylor remains blocked today.

34. As a result, Taylor cannot comment on Alderman Lennon posts about political and social issues that are important to him. For example, Taylor has been blocked from participating in discussions with other Berwyn residents regarding City Council agendas and upcoming votes on matters including City finances, capital expenditures for the police department, promotions of City employees, proposed zoning changes, and lawsuit settlements. Taylor is also excluded from discussions of social issues of interest to him such as LGBTQIA+ events in the community in which Alderman Lennon has played a significant role. Taylor would like to add his viewpoints to discussions with other members of the community and to express his opinions to Alderman Lennon.

35. Because he is blocked from the Facebook Page, Taylor's ability to petition his elected representative has been impeded and he is unable to express his viewpoints in dialogue with other residents of the community.

36. Prior to bringing this lawsuit, Taylor asked Lennon to unblock him by sending an email to Lennon and his City Council colleagues. In addition, Taylor has complained to the City Clerk and the City Attorney regarding his being blocked by Alderman Lennon, but nothing has changed.

**Class Allegations**

37. Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class.

38. The Class that Plaintiffs seek to represent is defined as all Berwyn residents who presently or in the future seek to comment on Alderman Lennon's Facebook Page and are subject to content-based regulation of their speech.

39. Plaintiffs meet the requisites for filing a class action pursuant to Fed. R. Civ. P. 26(b)(2). Proceeding as a class action is the most efficient means of adjudicating Plaintiffs' claims because (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims of the representative Plaintiffs are typical of the claims of the class; and (4) the representative Plaintiffs will fairly and adequately protect the interests of the class.

40. The members of the Class are so numerous that their joinder is impracticable. More than 3,000 people have "liked" Alderman Lennon's Facebook Page and may seek to interact with the Page. Because Alderman Lennon blocks people at his sole discretion, untethered to any written guidelines or principles, any one of these Facebook users is at risk of being subjected to content-based regulations of their speech.

41. The core legal and factual questions are common to the class and can be answered on a class-wide basis. The common questions include the following:

- Is Alderman Lennon's Facebook Page a public forum under the First Amendment?

- Is it permissible under the First Amendment for Alderman Lennon to decide who may participate in the dialogue that takes place on his Facebook Page?

- Is it permissible under the First Amendment for Alderman Lennon to decide what viewpoints and opinions can be expressed on his Facebook Page?

42. These common questions predominate over any questions affecting only individual class members.

43. The named Plaintiffs' claims are typical of the claims of the Class because the named Plaintiffs have been subjected to content-based regulation of their speech on Alderman Lennon's Facebook Page, which is the same harm that members of the class have suffered and will continue to suffer in the future in the absence of classwide injunctive relief.

44. The named Plaintiffs are adequate class representatives because their interests overlap with and are not in conflict with the interests of the Class. Plaintiffs have retained counsel experienced in class action litigation, including First Amendment class actions, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

45. This matter is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the class as a whole.

# COUNT I
## 42 U.S.C. §1983
## Violation of the First Amendment

46. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

47. Alderman Lennon's Facebook Page is a public forum within the meaning of the First Amendment.

48. Because the Page is a public forum, Defendant Lennon's content-based regulation of speech within that forum violates the First Amendment.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) certify that this case may be maintained as a class action against Defendant Alderman Lennon pursuant to Fed. R. Civ. P. 23(b)(2);

(b) issue a preliminary and then permanent injunction prohibiting Defendant Lennon from engaging in content-based regulation of speech on his Facebook Page as to Plaintiffs and the class they seek to represent;

(c) issue a declaratory judgment that Alderman Lennon's content-based regulation of speech on his Facebook Page violates the First Amendment;

(d) enter judgment in favor of the named Plaintiffs and against Defendant Lennon for compensatory and/or nominal damages in an amount to be determined at trial;

(e) enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

(f) grant Plaintiffs any other relief the Court deems appropriate.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net